FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

98 JUN 23 AM 9: 37

U.S. DISTRICT COURT
N.D. OF ALABAMA

PRESTON DAVIS, SR.,        ]

       ]

     Plaintiff(s),        ]

       ]

     vs.        ]     CV 98-N-1060-W

       ]

DIRECT MERCHANTS CREDIT        ]

CARD BANK, N.A.,        ]

       ]

     Defendant(s).        ]

ENTERED

JUN 23 1998

### MEMORANDUM OF OPINION

The Court currently has for consideration the plaintiff's motion to remand, filed May

26, 1998. In its notice of removal, filed April 30, 1998, the defendant asserted federal

jurisdiction in this Court on the alternate grounds of diversity of citizenship, under 28 U.S.C.

§ 1332, and federal question, under 28 U.S.C. § 1331, via the National Bank Act, 28 U.S.C.

§ 85-86. *See Notice of Removal*, ¶ 4. At that time, the Court expressed its concern that

subject-matter jurisdiction in this cause may be lacking and that the propriety of the

defendant's removal should be questioned. *See Order* (entered May 12, 1998). The

parties have fully briefed the issues and the motion to remand, therefore, is ripe for

decision. Upon due consideration, the motion will be granted.

The plaintiff originally commenced this action on or about February 5, 1998, in the

Circuit Court of Greene County, Alabama. The plaintiff purported to bring this lawsuit as

a class action pursuant to Rule 23(b)(3) of the Alabama Rules of Civil Procedure, seeking

to represent a statewide class of persons whom the defendant allegedly "charged for



credit insurance without consent." *Complaint*, ¶ 6. The plaintiff asserts causes of action against the defendant for misrepresentation, fraudulent suppression, deceit, conspiracy to defraud, breach of contract, negligence and wantonness, and negligent and wanton hiring, training, and supervision. *See Complaint*, at Counts I through VII. The plaintiff seeks only compensatory damages against the defendant in this action, and further states in his complaint that the "total aggregate amount of damages sought in this action under all counts, is $74,999 per class member." *Complaint*, ¶ 3. Moreover, the plaintiff expressly "does not claim punitive damages under any claim, cause of action or theory of recovery," "does not seek any injunctive relief," and states that "[t]his is a common fund case; the plaintiff is not entitled to and does not seek an add-on attorney's fee in addition to the recovery obtained on behalf of the class." *Complaint*, ¶ 3.

**A.    Diversity Jurisdiction: Attorneys' Fees from a Common Fund to Establish the Jurisdictional Amount.**

As to the defendant's assertion that diversity of citizenship jurisdiction exists, the Court is mindful that the point of dispute between the parties is whether the amount in controversy requirement of $75,000 can be satisfied, for the plaintiff appears to concede that the citizenship of the parties is diverse. *See Motion to Remand*, at 1. In his state court complaint, the plaintiff has clearly and unequivocally described a class of persons, each of whom, by joining the class, automatically gives up his individual claim to the extent such claim might, without such a disclaimer, exceed $74,999.00;[1] seeks no injunctive relief

---

[1] As the Court noted in its May 12, 1998, order, although the defendant contends that the complaint is ambiguous whether $74,999 is the true total amount of damages limited per plaintiff in this action, the Court reads the complaint to mean what it says, namely, that the "total aggregate amount of damages sought in this action under all counts, is $74,999 per class member." *Complaint*, ¶¶ 3 & 4. Such an unequivocal waiver of any recovery

whatsoever; seeks no punitive damages whatsoever; and renounces any claim for attorneys' fees other than what may be carved out of any compensatory damages he is awarded.

The Court is aware that some non-controlling authority exists holding that attorneys' fees in class actions must be considered in the aggregate and counted against each class member's amount in controversy for purposes of determining whether the $75,000 jurisdictional threshold has been crossed. *See, e.g., Culverson v. General Motors Acceptance Corporation*, CV-96-B-3331-J (N.D. Ala. 1997) (Blackburn, J.). It is upon the reasoning of *Culverson* that the defendant's removal rests, at least in part. *See Defendant's Memorandum of Law in Support of Removal and In Opposition to Plaintiff's Motion to Remand*, at 2-11. However, upon review of the law and the facts of the present case, the Court is not persuaded that such a "common fund" theory serves to provide the removal jurisdiction the defendant herein claims. Although plaintiffs' possible attorneys' fees are recoverable jointly, just as punitive damages would be, they are payable only from monies recovered by individual class members whose claims, *including* his or her share of the attorneys' fee, are limited to $74,999.00. The plaintiff's state court complaint appears to have removed all possible ambiguities on this question.

In arriving at this conclusion, the Court is in agreement with Judge William Acker

---

greater than $74,999 by any plaintiff in this action removes the amount-in-controversy issue from the analysis of *Jady Pipes v. American Security Insurance Company*, CV-96-H-206-NE (N.D. Ala. 1996) (Hancock, J.), cited by the defendant in its removal papers, *see Notice of Removal*, ¶ 5, and further argued in its brief in opposition to remand. *See Defendant's Memorandum of Law in Support of Removal and in Opposition to Plaintiff's Motion to Remand*, at 10 & n.2. This Court has previously held that class counsel may limit the claims of absent class members. *See Dowdle Butane Gas Co. v. Jones*, CV-96-N-3285-W, at 5-6 (N.D. Ala. 1997).

and Magistrate Judge Michael Putnam, both of this District, who each have held this year

that attorneys' fees from a common fund cannot establish the jurisdictional amount in

controversy. *See Horton v. Alliance Mortgage Co.*, CV-98-AR-0581-S (N.D. Ala. Apr. 28,

1998) (Acker, J.); *Patterson v. Time Warner Operations, Inc.*, CV-97-TMP-2915-S (N.D. Ala.

March 31, 1998) (Putnam, J.). On this issue, Judge Putnam has effectively countered the

defendant's claim that a *common-fund* attorneys' fee claim is relevant to the amount in

controversy question.

> Unlike an attorneys' fee awarded to a party and payable by the other party
> under a fee-shifting statute or contract provision, a fee taken from the
> common-fund of the class recovery is not a separate and distinct form of
> relief comparable to punitive or compensatory damages, or even an
> injunction. Once the common fund of the class recovery is established from
> compensatory and, perhaps, punitive damages, class counsel's fee is
> *deducted* from it. It is the plaintiff class, not the defendant, that pays the
> common-fund attorneys' fee. Because the defendant does not pay the fee,
> it is not a part of the "controversy" between the parties, any more so than the
> contingency fees collected by counsel in individual tort cases.

> Nothing in *Tapscott* [*v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.
> 1996)] suggests that an attorneys' fee taken from the common recovery of the
> class, as distinct from an attorney's fee the defendant is ordered to pay, is a
> form of relief controverted between the parties. To allow the defendant to
> remove a case on the contention that the *plaintiffs* will have to pay their own
> attorneys more than $75,000 in fees is to allow the defendant to remove the
> case on the basis of something it is not a party to. Whether the common-fund
> of damages obtained by the plaintiffs will be reduced to pay their attorneys
> has no impact whatsoever on the defendant. Paraphrasing *Tapscott*, it is true
> the defendant is disinterested in the distribution of the fee, but only because
> it is not having to pay it.

> Furthermore, to conclude that a common-fund attorneys' fee can be
> the basis for meeting the jurisdictional amount in controversy is to conclude
> that virtually *all* class actions are removable to federal court. Almost all class
> actions involve the possibility that class counsel will receive a fee greater
> than $75,000, in most cases paid by counsel's client, the plaintiff class, not the
> defendant. Holding that the jurisdictional amount in controversy is met if

> class counsel is entitled to a "cut" of his clients' recovery, is a great and
> unwarranted expansion of removal jurisdiction, not supported by *Tapscott*.

*Patterson*, Mem. Op. and Order at 12-15 (emphasis in original) (footnotes omitted) (quoted
in *Horton*, Mem. Op. at 4-6). Accordingly, the Court concludes that the jurisdictional
minimum of $75,000 cannot be met and, as a result, no diversity jurisdiction exists.

## B.      Federal Question Jurisdiction:  The National Bank Act and Complete Preemption.

The defendant alternatively contends that this action arises under the National Bank
Act ("NBA"), 12 U.S.C. §§ 85-86, thereby creating federal question jurisdiction, because the
plaintiff's state law claims amount to an allegation that the defendant charged "interest,"
as that term is interpreted under the Act, and because such claims are thus completely
preempted.  *See Defendant's Memorandum of Law in Support of Removal and In
Opposition to Plaintiff's Motion to Remand*, at 11-16.  This Court, however, has previously
recognized that the NBA does not categorically and completely preempt state law claims.
*See J.R. Bland Wilson v. First Union Nat'l Bank of Ga.*, CV-97-N-0641-S (N.D. Ala. 1997).

The National Bank Act provides, in part, that "[a]ny association may . . . charge on
any loan . . . *interest* at the rate allowed by the laws of the State . . . where the bank is
located."  12 U.S.C. § 85 (emphasis added).  The Act further provides for penalties for
violating this interest limitation, including "forfeiture of the entire interest," 12 U.S.C. § 86,
and the right to "recover back, in an action in the nature of an action of debt, twice the
amount of interest thus paid from the association taking or receiving the same period."  *Id.*
The Comptroller of Currency has adopted a regulation defining the term "interest" to
include the following: "any payment compensating a creditor or prospective creditor for

an extension of credit, making available a line of credit, or any default or breach by a borrower of a condition upon which credit was extended;" and, with regard to "fees connected with credit extension or availability[,] . . . numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees." 12 C.F.R. § 7.4001(a).

Some courts have accepted the rule that the National Bank Act can in some circumstances completely preempt a state law claim made for excessive interest charges. *E.g., M. Naha & Co. v. First Nat'l Bank*, 930 F.2d 608, 612 (8th Cir. 1991); *Moss v. Southtrust Mobile Services, Inc.*, CV-96-P-1647-W (Pointer, J.); *Fortenberry v. Southtrust Bank of Alabama National Association*, CV-95-B-1691-J (Blackburn, J.); *Watson v. First Union Nat'l Bank of South Carolina*, 837 F. Supp. 146, 150 (D.S.C. 1993); *Nelson v. Citibank (South Dakota) N.A.*, 794 F. Supp. 312, 316 (D. Minn. 1992). Looking to these and other cases, the defendant essentially argues that an impermissible premium as alleged by the plaintiff here, or a premium charged in excess of that allowed by state law, could be viewed as interest thus falling within the coverage of sections 85 and 86 of the National Bank Act. *See Defendant's Memorandum of Law in Support of Removal and In Opposition to Plaintiff's Motion to Remand*, at 13-14. This argument, however, is rejected for several reasons.

First, the plaintiff "is master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S. Ct. 410, 411 (1913), and thus has the prerogative to rely on state law alone, although both state and federal law may give him a cause of action. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987). Second, if the defendant's argument is accepted, then all insurance

premiums charged by national banks will be subject to regulation under the National Bank Act. *See Kenney v. Farmers Nat'l Bank of Opelika, Ala.*, 938 F. Supp. 789, 793 (M.D. Ala. 1996). If the Comptroller (whose definition of interest is entitled to deference, *see Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 116 S. Ct. 1730, 135 L. Ed. 2d 25 (1996)) had intended this sweeping result, he would have said so and he surely could not have adopted a definition of interest that expressly excludes insurance premiums. *See Kenney*, 938 F. Supp. at 793. Third, if whether a state law claim challenging a national bank's interest charges (which are indisputably covered by the National Bank Act) is a debatable issue, *contrast M. Nahas & Co. v. First National Bank*, 930 F.2d 608 (8th Cir. 1991) *with Spellman v. Meridian Bank*, 1995 WL 764548 (3rd Cir. Dec. 29, 1995), then a state law claim challenging a national bank's insurance premium (which is not covered by the National Bank Act) is most assuredly not completely pre-empted. Finally, there is no evidence of congressional intent, express or implied, to make state law claims based on insurance premiums removable to federal court.[2] Moreover, it cannot be reasonably argued that the National Bank Act's regulations covering insurance premiums are similar to the civil enforcement and jurisdictional provisions in the LMRA and ERISA--indeed, it cannot be argued that there is any regulation at all. This Court, therefore, cannot reach the "extraordinary" but necessary finding, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S. Ct. 1542, 1547 (1987), that a defense to insurance premiums charged by national banks should be equated to complete pre-emption, super pre-emption, *see, e.g., Franchise*

---

[2] Because the National Bank Act was passed in the 1860s, before the origination of the concept of "complete pre-emption," it would be impossible to find any explicit evidence of congressional intent. *See Kenney*, 938 F. Supp. at 794 & n.3. However, one still could look to implicit evidence of such intent.

*Tax Bd., supra* (some but not all of ERISA claims are "completely pre-empted"), or "super-duper" pre-emption, as that doctrine has been referenced by Judge Acker in the ERISA arena. *See, e.g., Anderson v. Metropolitan Life Insurance Co.*, No. 96-AR-2703-S, 1997 WL 115863, *1 (N.D. Ala. Jan. 3, 1997).

The Court wishes to make clear, however, that it does not hold that Mr. Davis's state law claims are *not* pre-empted by the National Bank Act. This Court merely holds that there is not such "complete preemption" as would support removal to federal court. After remand, the state court may still independently conclude that sections 85 and 86 of the National Bank Act pre-empt the plaintiff's state law claims, *see Glasser v. Amalgamated Workers Union Local 88*, 806 F.2d 1539, 1540 (11th Cir. 1986) (per curiam); *Soley v. First Nat'l Bank of Commerce*, 923 F.2d 406, 408-09 (5th Cir. 1991); *see also Franchise Tax*, 463 U.S. at 12-14 & n.12, 103 S. Ct. at 2848 & n.12 (where federal court lacks removal jurisdiction, state court should determine whether pre-emption defense has merit), though the Court views such a finding doubtful in light of its analysis *supra*.

Accordingly, the plaintiff's motion to remand will be granted and this cause will be remanded to the Circuit Court of Greene County, Alabama, from whence it was improvidently removed.

Done, this **24th** of June, 1998.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE